FRANK S. REVELL ET AL. *vs.* W. MEADE HOLLA-DAY ET AL., BOARD OF SUPERVISORS OF ELECTIONS.

*Legalized Primary Election—Power of State Central Committee of a County to Change Date for Holding Primary Election Under Act of 1904, ch. 603.*

The Act of 1904, ch. 603, provided that the primary elections of political parties in Anne Arundel County should be held under the direction of the Supervisors of Elections and that candidates for public office should be nominated, and delegates to party conventions elected, under the provisions of that Act. Before the passage of the Act, according to the usage of the Democratic party, the State Central Committee for the county had the power to select the time for holding the primary election and the county convention and had the power to postpone or change a time first appointed for holding a primary. On June 6th, 1905, the said Central Committee for that county issued a call for primaries to be held on July 22nd for election of delegates to a county convention to meet on July 26th, and nominate candidates for office to be voted for on November 7th. On account of vacancies in the Board of Election Supervisors and the failure to appoint the full number of elec-

tion judges and clerks within the time prescribed by the Act, which was seven days after the issuing of the call, the said Central Committee for the county issued a new call for primaries to be held on August 12th, and a convention on August 15th. One faction of the Democratic party voted at primaries held on July 22nd, the date named in the first call, and another faction voted at the primary held on August 12th, the date named in the second call. Upon a petition by candidates nominated at the first convention for a *mandamus* requiring the Election Supervisors to place their names upon the official ballot as the duly nominated candidates of the party, *held*, that the Act of 1904, does not limit or restrict the power of the Central Committee for the county to change the time first fixed for holding primaries; that the change in this case was made by the committee in good faith and upon reasonable grounds, and the primaries of July 22nd and the convention of July 26th were not legally held, and therefore the petitioners are not entitled to have their names placed upon the official ballot, but the nominees of the convention of August 15th, are so entitled, if the primaries held uuder the postponed call were conducted in conformity with the Act of 1904.

Appeal from the Circuit Court for Anne Arundel County (JONES, C. J., and THOMAS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Alonzo L. Miles* and *Robert Moss*, for the appellants.

By the Act of 1904 primary elections in Anne Arundel County were placed upon the same high plane as a general election, to be conducted with all the regularity and legal formalities as such general election. Indeed, it seems to have been the policy of most of the States of the Union, as shown by recent legislation, to throw the same safeguards around the holding of a primary election to nominate candidates for office as apply to general elections.

The pleadings and the testimony in this case show conclusively that everything required by the Act of 1904, pre requisite to the holding of a primary election was done in this case, that is to say, on the 6th day of June, 1905, the Democratic State Central Committee for Anne Arundel County, issued a call to the Democratic voters of said county to hold a primary meeting on Saturday, July 22nd, 1905, for the purpose, among

other things, of nominating candidates for the offices for which the appellants were subsequently nominated; this call was published for at least fifteen clear days in two newspapers published in Anne Arundel County; each of the two contesting factions of the Democratic party, within five days from the call, filed with the Supervisors of Elections the names of two persons for judges and two persons for clerk in each election district or precinct where the primary was to be held. From the list submitted by each faction the Supervisors of Elections of Anne Arundel County on June 13th, 1905, appointed one judge and one clerk and adjourned to June 26th, when the list of judges and clerks for the entire county was completed; official ballots, containing the names of the delegates in each election district of the county, were printed in the manner prescribed by law; the judges and clerks of the primary so appointed all qualified, by taking and subscribing the prescribed oath, the ballot-boxes and poll-books were actually delivered to the judges; the primary was actually held by the said judges and clerks; the Democratic voters assembled and voted in pursuance of the call, and the result ascertained; returns were made by the judges of each election precinct to the Supervisors of Elections, as required by law; the delegates elected assembled in convention on July 26th, and nominated the appellants for the respective offices above stated. The certificate of nomination was duly made out and signed by the president and secretaries of the convention and delivered to the defendants.

Notwithstanding all this, the defendants refused to print the names of the appellants upon the official ballot, and assign in their answer the reason that on July 21st, 1905, a majority of the State Central Committee for Anne Arundel County postponed the primary.

Had the committee the right to so postpone, or call off the primary of July 22nd, is the material inquiry in this case? If they had a right to postpone it once, after all the machinery provided by the law had been put in motion, they would have the right to postpone it again and again, as long as they might

have any selfish purpose to accomplish. Such a power placed in the hands of a local State Central Committee would be dangerous and at once make the committee, instead of the servants of the Democratic voters of a county, a tyrant to oppress them. Given such a power a State Central Committee of the county could fix a day for a primary and wait until the ballots were in the boxes, and when they found that the faction of the party represented by them was defeated, call off a primary just before the votes were counted. In this connection it should be remembered that the chairman of the local committee for Anne Arundel County was himself at the head of one of the factions contesting the primary (and the Act of 1904 in terms recognizes factions). The committee was without authority to change the date first fixed for holding the primary. *Neal* v. *Young*, 75 S. W. Rep. (Ky.) 1082; *Young* v. *Beckham*, 72 S. W. Rep. 1092; *Brown* v. *Republican County Committee*, 68 S. W. Rep. 622.

If the Court shall take the view that this is a political question which should be determined by the highest governing authority of the party, whose candidates the appellants claim to be, and will follow that determination, the question arises, who constitutes the highest governing authority of the Democratic party? *It is alleged in the bill and not denied in the answer* that the Democratic State Convention of the State of Maryland constitutes the governing power of the Democratic party of the State, and that said Democratic Convention on the 28th day of September, 1905, composed of delegates from every county of the State, after due consideration, decided that the primary election held in Anne Arundel County on July 22nd, 1905, was held and conducted in compliance with the *party custom* and the provisions of ch. 603 of the Acts of 1904, of the General Assembly of Maryland.

If the Court treats this as a political question, will it accept the action of the Democratic State Convention, constituting as it does the governing power of the Democratic party of the State, as the *ultimatum*, or will it abide by the decision of the local committee for Anne Arundel County, who are the

creatures of the Democratic State Convention appointed by said convention and deriving all their powers therefrom? This is a political question. *In re Fairchild,* 151 N. Y. 359; *People* v. *District Court,* 18 Colo. 26.

*Wm. Pinkney Whyte* and *Ridgely P. Melvin,* for the appellees.

On June 6th, 1905, the Democratic State Central Committee of Anne Arundel County, issued a call for the Democratic primary election in said county, and designated Saturday, July 22nd, as the date therefor, and Wednesday, July 26th, as the date for the county convention. The call was duly published and within 5 days from the issuance thereof each of the two contesting factions in the county filed a list of names with the Board of Supervisors of Election, at that time composed of Messrs. Revell, Davidson and Werntz, from which lists said board appointed the judges and clerks to conduct said primary election. The appointment of eleven of the judges and two of the clerks, however, was not made by said board until June 20th, 1905, fourteen days after the date of the issuance of the aforesaid call by the State Central Committee. The other judges and clerks were appointed on June 13th. In the third district of the county none of the judges appointed was selected from the list of recommendations submitted by one of the two factions of the Democratic party.

The qualification oaths of some of the judges were returned to the office of the supervisors along with certain of the ballot-boxes and poll-books after July 22nd, 1905, the date of the first primary.

On July 17th, one of the "Old Board" of Supervisors resigned, and another member was removed from office, and two members of the present board, Messrs. Holladay and Watkins, were appointed to fill the vacancies. On July 20th, a change in the clerkship of the board also took place. After Messrs. Holladay and Watkins had been commissioned they found that the combination of the safe in the supervisor's office had been changed, so that it became necessary to send

to Baltimore for an expert to get it open before said "New Board" could get possession of the muniments of office. This was accomplished on the afternoon of July 20th. On Friday, July 21st, the Democratic State Central Committee of Anne Arundel County, issued and published a proclamation postponing the date for holding the Democratic Primary Election from July 22nd, to some subsequent date, and setting forth certain reasons for said postponement. On the same day, and acting in accordance with said proclamation, the Supervisors of Election (the appellees) sent out a formal notice to all of the judges and clerks appointed to conduct the said primary election, informing them of the aforesaid postponement of date and instructing them accordingly ; which notices were served by the Sheriff of Anne Arundel County upon every one of the said judges and clerks before the hours named for holding said primary in the first instance.

Notwithstanding the above-mentioned transactions, an alleged Democratic primary election was held in a majority of the voting precincts of the county on July 22nd. As a result of said primary, no returns at all were received by the Supervisors from two precincts and no ballot-boxes or poll-books were received from three precincts. From another precinct a ballot-box, not of the official kind, was received. In one of the precincts a ballot-box and poll-book issued by the president of the Board of Supervisors to one of the judges for said precinct were returned to the office of the Supervisors by said judge after the aforesaid postponement of date and before the hour set for holding said primary of July 22nd. From the remaining precincts ballot-boxes and poll-books, and alleged returns, were delivered to the Board of Supervisors within two days from the holding of said primary. In pursuance of this primary election of July 22nd, an alleged Democratic convention was held on July 26th. . This convention, however, was held without having in its possession at any time any of the returns from said primary of July 22nd. This was owing to the fact that the chairman of the Democratic State Central Committee for Anne Arundel County de-

clined to receive said alleged returns, when offered to him by the president of the Board of Supervisors, on the morning of July 26th, on the ground that they were not recognized by him as returns from a regular Democratic primary election legally held. The position taken by said chairman in all these matters was that also of five of the six members of said committee. Upon the refusal of the said chairman to accept said alleged returns they were kept in the possession of the Board of Supervisors. The convention of July 26th then made use of alleged duplicate returns in its organization for business

The petitioners' demurrer to the answer in this case admits the fact, alleged in said answer, that both the primary election of August 12th and the convention of August 15th, were held in compliance with chapter 603, of the Acts of 1904, *in every particular*. On August 22nd, 1905, a certificate of nomination was presented to the Board of Supervisors of Elections (the appellees) as coming from the aforesaid convention of August 12th, with the identical demand made on behalf of the nominees mentioned in said certificate as that made on behalf of the certificate coming from the convention of July 26th, aforesaid; namely, that they be placed upon the official ballot as the duly and legally nominated candidates of the Democratic party for the several offices named in said certificates.

On August 24th, 1905, the Board of Supervisors of Elections (the appellees) passed a resolution announcing that they had decided to place the nominees of the convention of August 15th upon the official ballot as being the legally nominated candidates of the Democratic party; and that the nominees of the convention of July 26th would not be placed upon said official ballot.

On September 28th, 1905, the State convention of the Democratic party of Maryland had before it two contesting delegations from Anne Arundel County, each claiming the right to be seated in said convention as the regular and legal delegates of the Democratic party from said county. One set of delegates had been nominated by the aforesaid convention of July 26th, and the other set of delegates had been nomi-

nated by the aforesaid convention of August 12th. Said State convention awarded seats therein to the delegates from the county convention of July 26th as having been named in accordance with party custom, and in compliance with the provisions of the primary election law for Anne Arundel County (chapter 603 of the Acts of the General Assembly of Maryland of 1904.)

The appellees contend : 1. That neither the primary election of July 22nd, nor the convention of July 26th, was held in pursuance of the provisions of the Primary Election Law for Anne Arundel County (chapter 603 of the Acts of 1904, of the General Assembly of Maryland) in several vital particulars ; that therefore, the claims of the appellants that they are the legally nominated candidates of the Democratic party is unfounded, and consequently, they have no right to a place upon the official ballot as such candidates.

In no respect was the convention of July 26th held under the Act of 1904. The alleged delegates to said convention at whose hands the appellants received their nomination, did not have even a *prima facie* right to seats therein, inasmuch as said convention was never at any time in possession of the returns from the primary election of July 22nd, which returns had not been delivered to the Supervisors of Elections within two days from that date, as prescribed by law, and retained exclusively by them upon the refusal of the chairman of the State Central Committee to recognize said returns as coming from a regular or legal Democratic primary election. Said convention was held, therefore, contrary to party authority (the State Central Committee at that time being the highest governing body in the party as far as Anne Arundel County was concerned) and held, also, contrary to the provisions of the statute law.

2. That the selection of a date for holding a primary election in Anne Arundel County is purely a party matter, to be determined by the governing body of the party in said county, namely, by the State Central Committee, and is not controlled or affected by any provisions of law. Therefore, it is compe-

tent for the highest power in the party, so far as concerns Anne Arundel county, to select, change or postpone the date for holding the party primaries in said county. On July 21st, 1905, the day when the primary election hereinbefore referred to was postponed to some subsequent date by the Democratic State Central Committee for Anne Arundel county, said committee was the highest power of the party then and there in existence, and was recognized by the Supervisors of Elections as being duly authorized to speak for the party. Therefore, when in consequence of such postponement of date the opera-- tions of the principal election law for Anne Arundel County became affected and a primary election and a convention were held, each in strict compliance with the provisions of said law, it was not within the power or province of a State convention, held nearly two months later, to decide that the local State Central Committee had exceeded its party authority and had no right to postpone the date aforesaid, if by so deciding it sought to nullify and render ineffectual the operations of said primary election law which took place subsequent to the mere postponement of date.

It is not denied that as to all questions of purely party government and party regularity, the highest tribunal in the party is supreme; but it is emphatically denied, on behalf of the appellees, that as to any matters regulated by statute law a decision of such tribunal can have any binding effect whatever upon Boards of Supervisors of Elections, or upon the Courts. Before the passage of the primary election law aforesaid, the Supervisors of Elections had no criterion to go by, in deciding between two rival tickets, except the decision of party tribunals as to the question of regularity. Upon the passage of said law, however, it became the criterion, and the supervisors are now bound to put upon the official ballot that ticket only which, in their judgment, was nominated under the provisions of said law, and not otherwise.

3. If no question of fraud be involved (and there is none in this case), a collateral attack will not be permitted upon a certificate of nomination or upon the action of a Board of Election

Supervisors in deciding that a certain ticket should go on the official ballot, unless the candidates themselves are called upon to appear and defend their rights.

The candidates on the ticket known as that certified to by the convention held under the authority of the State Central Committee for Anne Arundel County, are not before the Court. They have not been served with process or voluntarily appeared and become parties. If the action of the appellees in their behalf should be set aside in this proceeding they might be seriously injured and their rights abridged without having the opportunty of being heard. That such a result would violate elementary principles of jurisprudence need not be said. . *Re-nomination papers of Frank S. Thomas*, 6 Pa. Dist. Rep. 652; *McDonald* v. *Huntley*, 114 Cal. 485.

4. That the appellees are not required, as a matter of clear, unequivocal, ministerial duty to place upon the official ballot to be voted at the election to be held on November 7th, 1905, any alleged candidates of the Democratic party except those nominated under the provisions of the primary election law for Anne Arundel County (ch. 603, Acts of 1904), and not otherwise; and that they are not bound to place a ticket upon the official ballot merely because its certificate of nomination happens to be made out in proper form; and that when there are two sets of nominees presented for a place upon said official ballot, setting up rival claims to recognition as the legally nominated candidates of the Democratic party, Supervisors of Elections are called upon to exercise judgment and discretion in determining which one of the two sets of nominees presented is entitled, under the law, to a place upon said ballot, as claimed; and that having once exercised their judgment and discretion adverse to one set or the other the Courts have no power to review or reverse such decision. *Wailes* v. *Smith*, 76 Md. 476; *State ex rel* v. *Latrobe*, 81 Md. 233; *McCrea* v. *Roberts*, 89 Md. 250; *Duvall* v. *Swann*, 94 Md. 618.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for

Anne Arundel County, dismissing the petition of the appellants for a writ of *mandamus* against the Board of Supervisors of Elections for that county, commanding them to cause to be printed upon the official ballots to be cast at the election to be held in that county on November 7th, 1905, the names of the several petitioners, as candidates for the offices for which the petition alleges they had been respectively nominated by a convention held in the city of Annapolis on July 26th, 1905, as candidates of the Democratic party, in compliance with the party custom and with the provisions of ch. 603 of the Acts of Assembly of 1904, entitled "An Act to legalize primary elections in Anne Arundel County."

This Act provides that political parties which, at the general election in November, 1903, polled ten per cent of the entire vote of the county, should thereafter nominate their candidates for public office, and elect their delegates to conventions, under the provisions of that Act, and not otherwise.

It requires fifteen clear days notice of the time and place of holding any primary, and publication of the call therefor for at least two weeks in two newspapers published in that county.

It forbids the holding of the primaries of two different parties on the same day, and gives the preference of the day selected to that party whose call is first inserted in the two papers.

It requires the Supervisors of Election within seven days from the issuance of any such call to appoint three judges and two clerks of election to conduct such primary, and prescribes the manner of their appointment, the character of the ballots to be used, the necessary machinery and rules for conducting the primary, and for returning and certifying the result thereof to the Supervisors of Election, and for the delivery of said returns by them to the chairman of the State Central Committee of the county, for the party holding such primary, on the day when the county convention is to be held; and it makes said returns *prima facie* evidence of the right of any delegate to a seat in the convention.

It requires the judges and clerks of election appointed

thereunder to take an oath in the usual form prescribed for judges and clerks of election under the general law of this State, and provides penalties for the violation by any person of the provisions of ·the Act.

The above is a brief summary of all the provisions of the Act.

The petition in this case alleges that the Democratic State Central Committee of the county, on June 6th, 1905, issued a call for primaries to be held in the several election districts on July 22nd to choose delegates to a county convention to be held on July 26th, at the court house in Annapolis, to select delegates to the state convention, and to nominate candidates for public offices to be filled at the election on November 7th, 1905; that all the requirements of law relating to said primaries and county convention were complied with, and that the petitioners were duly nominated by said county convention for the respective offices as stated in said petition, and that the returns of the said primaries were duly certified to the Board of Supervisors of the county, and by them duly offered to be delivered to the chairman of the State Central Committee of the Democratic party in that county, who refused to receive the same,

The petition then alleges that notwithstanding the premises, and notwithstanding the fact that the Democratic State Convention constituting the governing power of the Democratic party in the State, and which met on September 28th, 1905, decided that the said primaries and the said county convention had been held in compliance with party custom and with the requirements of ch. 603 of 1904, the Board of Election Supervisors of the county have declined, and refuse to cause the petitioners names to be printed as candidates for said offices for which they were nominated, upon the official ballots which, under sec. 53 of Art. 33 of the Code of Public General Laws of Maryland, it is their duty to provide for use by the voters at the election on November 7th, 1905.

The Board of Election Supervisors answered said petition, denying that the convention of July 26th was held in con-

formity with ch. 603 of 1904, and denying that any of the nominations then made, or attempted to be made, were duly and legally made.    The answer alleges that on July 21st, 1905, the Democratic State Central Committee of the county rescinded the call of June 6th, 1905, for primaries to be held on July 22nd and for a county convention to be held on July 26th; and issued a new call for such primaries to be held on August 19th, 1905, and for a county convention to be held on August 22nd, 1905, and assigned the following reasons for their action:

·1st. That the Election Supervisors failed to appoint all of the judges and clerks within seven days from the date of the call, and appointed others contrary to the provisions of law.

2nd. That since the date of the first call, one of said supervisors had been removed by the Governor, and another had resigned, and these vacancies had been filled by the Governor.

3rd. That after such removal one Democratic member, and the Republican member of said board, met without authority of law and made additional appointments of judges and clerks of election for such primaries.

4th. That the newly appointed members of the board had not been able to get possession of the records of the office, and it was impossible to ascertain who were the legally and who were the illegally appointed judges and clerks, and,

5th. That the State Central Committee for the county deemed it best to postpone the primaries under these circumstances "in order that they might be legally held, and that the Democratic voters might have the privilege of expressing their honest will."    After issuing the call on July 21st postponing the primaries to August 19th, it was discovered on July 24th that it became necessary in order to comply with a resolution of the Democratic State Central Committee of the State requiring the primaries throughout the State to be held not later than August 12th, to change the date from August 19th to August 12th, and the State Central Committee for the county accordingly on July 24th issued a new and corrected

call for primaries to be held on August 12th and a county convention to be held on August 15th, 1905.

The answer further alleges that the Supervisors recognizing the State Central Committee of the county as duly authorized to speak for the party in matters pertaining to party government, not regulated by law, notified all the judges and clerks previously appointed, of this action of the committee, by notices served by the Sheriff of the county before the hour set for holding the primaries originally called for July 22nd.

The answer further alleges that in certain precincts, the judges and clerks, in obedience to the postponed call did not attend the primaries originally called for July 22nd, and that in other precincts no ballot-boxes or poll-books were furnished by the Supervisors as required by law, and that from some precincts they had received no returns of said primaries, and that for these and other reasons the county convention held July 26th had no power or authority to nominate candidates for public office, and that when the Supervisors offered to the chairman of the State Central Committee for the county the returns which they had received, he declined to accept them on the ground that the primaries had been held in violation of the law.

The answer admits that a paper purporting to be a certificate of nomination of the petitioners by a Democratic convention held July 26th was filed with the Supervisors on August 15th, 1905, but alleges that on August 22nd, 1905, a certificate of nomination of candidates for the same offices was filed with them purporting to have been made by a Democratic convention held August 15th, 1905, in pursuance of said postponed call for primaries to be held, and actually held on August 12th, 1905, and for a county convention to be held and actually held on August 15th, 1905.

The answer admits that the Supervisors have declined to cause the petitioners names to be printed on the official ballot, because they allege they can only legally print thereon one set of nominees by a Democratic convention, who must be those nominated and certified by a Democratic convention

held under ch. 603 of the Acts of 1904, and that they have already determined that the candidates certified by the convention held August 15th are those legally nominated under the provisions of said Act, and that they so informed the petitioners through a resolution to that effect passed August 24th, 1905, a copy of which was filed as an exhibit by the petioners with their petition.

The answer further alleges that the primaries of August 12th and the convention of August 15th were held in strict conformity with the requirements of ch. 603 of 1904, and that in determining that the nominees of that convention were entitled to be placed on the official ballot as Democratic nominees, they acted in the exercise of the judgment and discretion reposed in them, and are not liable to the writ of *mandamus.*

The petitioners replied to so much of the answer as denies the legality of their nomination, that they were made as set forth in paragraphs 2 to 7 of their petition.

As to paragraph 4 of said answer which relates to the nonattendance of judges and clerks in certain precincts on July 22nd, and the failure of the Supervisors to furnish ballot-boxes and poll-books in other precincts, the petitioners joined issue on such allegations as traverse any facts alleged in the petition, and demurred to all the other allegations of the answer.

The respondents joined issue on the first paragraph of the replication, and on the demurrer of the petitioners to the residue of the answer, and the case was heard before the Court by agreement of counsel.

In the view which we take of this case there is but one question which need be considered, and that is whether the State Central Committe for the county had the power to postpone or change the call for holding the primaries, and the county convention, and if so whether the power was properly exercised under existing circumstances, or whether the power was exhausted when the call was issued for holding the primaries on July 22nd and the convention on July 26th. If they had that power, and have exercised it in good faith and for good and valid reasons, then the primaries of July 22nd and the

convention of July 26th were not legally held, and the peti-
tioners are not entitled to have their names placed upon the
official ballot; and, *e converso,* the nominees of the convention
of August 15th are entitled to have their names placed upon
the official ballot, provided the primaries and the county con-
vention held under the postponed call were conducted in tech-
nical conformity with the requirements of the Act of 1904, ch.
603, which is admitted by the demurrer to the answer.

We think it is clear that the power of the State Central
Committee for the county is not exhausted by the mere issu-
ance of a call selecting a day for holding primaries and a
county convention.

Before the passage of ch. 603 of 1904, this committee was
unquestionably the sole governing power of the party as to
the selection of the time for holding primaries and the county
convention, subject perhaps to any controlling authority which
the State Central Committee might possess to prescribe a date
for the State convention, and to fix a period within which the
county primaries should be held, as was done in this instance,
though we are not to be understood as expresing any opinion
upon the power of the State Central Committee for the State
in that regard, that question being a purely political question
with which we have nothing to do. That Act in nowise limits
or restricts the power and authority of the county committee in
that regard. Before its passage, the power to fix these dates
necessarily implied the power to change them by a new se-
léction, made in the honest exercise of judgment and discre-
tion for the welfare of the party, and we can discover nothing
in the letter or spirit of this Act which can be held to take
away or limit the discretion theretofore vested in the commit-
tee, further than may become necessary in making any such
change in order to comply with the requirements as to notice
of the changed date, and any other requirements applicable to
any call whether original or changed.

There may be many adequate reasons for changing a call
of this sort after it has been issued. The outbreak of an ep-
idemic of disease in the county; the absence from their homes

for any unusual cause of considerable numbers of party voters; the pressure of needful labor, as in harvest or in seeding time which cannot be neglected without serious injury to agricultural communities, these, and other reasons which might be mentioned would amply justify such a postponement in order to insure fuller and freer expression to the will of voters in the party.

If it were alleged and shown in the present case that the change of date was intended to work some fraud upon one element or faction in the party, or to aid in the perpetration of some political trick upon some candidate or set of candidates, a different question, would arise. But there is no such charge here, and it will be time enough to consider such a question when it does arise. The facts alleged in the resolutions of the State Central Committee for the county at the time of the postponement, referred to in respondent's answer and admitted by the demurrer, in our opinion constitute reasonable grounds for the postponement and are fairly within the discretion which we think should be, and is, committed by a fair and reasonable construction of the Act of 1904 to the committee as the governing body of a political party in the county. It is not charged, and does not appear that this postponement intentionally or otherwise gave any advantage to one faction over another. Each stood alike under its terms, and it was as important to one as to the other, that the nominations when made should be lawfully and regularly made, so that they could not be excluded from the offical ballot, either by the voluntary action of the supervisors, or at the instance of any objector. The sole material question raised upon the pleadings and the evidence is the question of the power to postpone for proper cause, and being convinced that this power existed before the passage of the Act of 1904, and is not taken away thereby, and may still be exercised honestly and in good faith, it follows that the petitioners are not entitled to have their names printed as Democratic nominees upon the official ballot and that the order dismissing their petiton must be affirmed.

*Order affirmed with costs to the appellees above and below.*
(Decided October 19th, 1905.)